IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DOMINGINHO POWELL, | ) | |
| | ) | |
| Plaintiff, | ) | Judge Darrah |
| | ) | |
| -vs- | ) | Case No.: 1:10-cv-07852 |
| | ) | |
| WEST ASSET MANAGEMENT, INC., | ) | Magistrate Judge Schenkier |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

Defendant, West Asset Management, Inc. ("West"), submits this memorandum in opposition to the Motion for Summary Judgment filed by plaintiff, Dominginho Powell, and in support of West's Cross Motion for Summary Judgment. The parties settled plaintiff's claim under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*., leaving only plaintiff's claim under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. For the reasons stated below, the Court should deny plaintiff's summary judgment motion, grant West's cross summary judgment motion, and dismiss plaintiff's remaining TCPA claim.

### I. INTRODUCTION

West is a national debt collection company. AT&T, Inc. ("AT&T") retained West to collect a debt owed by Sharmaine Hunter to AT&T relating to landline, residential telephone service. Along with other account information, AT&T provided to West the contact number associated with Ms. Hunter's AT&T account. AT&T provided telephone

number 773-xxx-7272 (the "7272 number") for Ms. Hunter's account. Ms. Hunter provided the 7272 number to AT&T as a contact number at which she could be reached in January 2010, at the time she opened her AT&T account.

In July 2010, approximately six months after Ms. Hunter opened her AT&T account and provided the 7272 number as a contact number, AT&T placed the account with West for collection. West then began calling the 7272 number for Ms. Hunter to collect the AT&T debt.

Although he is *not* the telephone subscriber for the 7272 number, plaintiff argues the 7272 number nevertheless belongs to him and West violated the TCPA by calling the number. Plaintiff is wrong. As discussed below, the TCPA is *not* violated if the call is "made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). For purposes of this consent defense, the "called party" is the individual the caller was attempting to reach--*the intended recipient of the call*. The undisputed record evidence establishes West had the consent of the "called party" and "intended recipient," *i.e.*, Ms. Hunter, to make the calls. Further, such consent (*which is tied to the 7272 number called*) was never withdrawn or revoked *by anyone* prior to West making the calls. Considering these undisputed facts, West is entitled to summary judgment as a matter of law.

Moreover, the evidence establishes West called the 7272 number in good faith, justifiably believing the number was a contact number for Ms. Hunter. Plaintiff's actions, however, reveal a much different motive and intent. Indeed, plaintiff's actions suggest (if not confirm) that plaintiff, who has filed other TCPA lawsuits, invited West's

calls and hoped they would continue, so that he could run to court and demand statutory "damages" of $1,500 for each call made. It is undisputed, *within two hours after West's first call to the 7272 number*, plaintiff called the West telephone number on his caller identification and asked who was calling. The West representative identified the company and explained the company was trying to reach Ms. Hunter. Rather than tell the representative that West was calling the wrong number, plaintiff hung up after getting the name of the company. Why didn't plaintiff simply ask West to stop calling the 7272 number? Because, as plaintiff testified, he believed his TCPA case would be worth more money if West continued to call the 7272 number.[1] Plaintiff testified: "I wasn't going to like, you know, tell them to stop calling. Like I said, at that point I left it up to my counsel."[2] Plaintiff believed it was in his pecuniary interest to let the calls continue and he did. In light of these facts, the Court should deny plaintiff's summary judgment motion and grant West's cross summary judgment motion.

## II. PROCEDURAL HISTORY

On December 10, 2010, plaintiff filed his Complaint.[3] Plaintiff alleges "West was attempting to collect a debt alleged owed by a person named Charmaine Hunter, to AT&T, account number ending in 5555."[4] Plaintiff alleges West violated the TCPA by autodialing his cellular telephone "upwards of 25 times" without his consent.[5]

---

[1] Exhibit C, Deposition of D. Powell, at p. 42, lns. 17-19.
[2] Id. at p. 43, lns. 2-4.
[3] Docket No. 1.
[4] Id. at ¶ 15.
[5] Id. at ¶¶ 2, 16-17, & 43-46.

On September 20, 2011, plaintiff filed his Motion for Summary Judgment.[6] Pursuant to his summary judgment motion, plaintiff seeks judgment on his remaining TCPA claim.[7]

### III. LAW AND ARGUMENT SUMMARY

"In 1991, Congress amended the Communications Act of 1934, 47 U.S.C. § 201, *et seq.*, with the enactment of the [TCPA], Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227)." *International Science & Technology Institute, Inc. v. Inacom Communications, Inc.*, 106 F.3d 1146, 1150 (4th Cir. 1997). "[T]he TCPA seeks to deal with an increasingly common nuisance—*telemarketing*." *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 514 (3d Cir. 1998) (emphasis added). "In the TCPA, Congress found that unrestricted telemarketing can be an intrusive invasion of privacy and that many consumers are outraged by the proliferation of intrusive calls to their homes from *telemarketers*." *F.T.C. v. Mainstream Marketing Services, Inc.*, 345 F.3d 850, 857 (10th Cir. 2003) (*citing* Pub. L. No. 102-243, at § 2) (emphasis added).

West is *not* a telemarketer.[8] In light of this fact, the TCPA does *not* apply to West or the calls at issue. *See, e.g., Starkey v. Firstsource Advantage, LLC*, 2010 WL 2541756, *5 (W.D. N.Y. 2010) ("The FDCPA, not the TCPA, was enacted by Congress to, *inter alia*, eliminate abusive debt collection practices by debt collectors."); *Garo v. Global Credit & Collection Corp.*, 2010 WL 5108605, *2 (D. Ariz. 2010) ("To the extent then that the automatic calls were debt collection calls, as the [Second Amended

---

[6] Docket Nos. 16-19.
[7] Id.
[8] Exhibit B, Affidavit of J. Jensen, at ¶ 5.

Complaint] alleges, Plaintiffs do not state a claim under the TCPA."). For purposes of its summary judgment motion only, however, West will assume the TCPA may be applicable and the subject calls were made with an "automatic telephone dialing system" or "artificial or prerecorded voice." Even with these assumptions, plaintiff's TCPA claim fails as a matter of law because the calls at issue were made with consent.

### A. West's Calls to the 7272 Number Were Made with Consent

The TCPA places limitations on telemarketing calls to landlines and cell phones. Plaintiff alleges West violated the TCPA cell phone provision, *i.e.*, 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA cell phone provision provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to make any call (*other than a call* made for emergency purposes or *made with the prior express consent of the called party*) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

As the italicized language indicates, a cell phone call does *not* violate the TCPA if the call is "made with the prior express consent of the called party." *Id.* The issue presented requires an interpretation of this language and specifically the phrase "called party."

### 1. The Phrase "Called Party" in § 227(b)(1)(A) Means "Intended Recipient" of the Call

The TCPA does not include a definition for the phrases "prior express consent" or "called party." However, the Federal Communications Commission ("FCC"), the agency

with rulemaking authority under the TCPA, has issued several orders interpreting these phrases. For example, in a 2008 order, the FCC declared the following:

> Because we find that autodialed and prerecorded message calls *to wireless numbers provided by the called party* in connection with an existing debt are made with the "prior express consent" *of the called party*, we clarify that such calls are permissible.

*In re TCPA*, 23 FCC Rcd. 559, 564 at ¶ 9 (emphasis added).

> [W]e clarify that autodialed and prerecorded message calls *to wireless numbers* that are *provided by the called party* to a creditor in connection with an existing debt are permissible as calls made with the "prior express consent" *of the called party*.

*Id*. at 559, ¶ 1 (emphasis added).

> IT IS FURTHER ORDERED that . . . autodialed and prerecorded message calls *to wireless numbers* that are *provided by the called party* to a creditor in connection with an existing debt are permissible as calls made with the "prior express consent" *of the called party* . . . .

*Id*. at 568, ¶ 17 (emphasis added).

These FCC pronouncements make clear that a debt collector may lawfully autodial a cell number for a debtor if the debtor provided the number to the creditor.[9] That is precisely what occurred here. Further, these FCC pronouncements make clear consent is tied to the number--not a particular person. The FCC did not rule calls to the debtor are made with consent; instead, the FCC ruled calls "to wireless numbers" are made with

---

[9] Several courts have agreed with and applied this common-sense ruling in TCPA cell phone cases. See, e.g., Sengenberger v. Credit Control Services, Inc., 2010 WL 1791270, *3 (N.D. Ill. 2010); Gutierrez v. Barclays Group, 2011 WL 579238, *2 (S.D. Cal. 2011); Cunningham v. Credit Management, L.P., 2010 WL 3791104, *4-5 (N.D. Tex. 2010); Pugliese v. Professional Recovery Service, Inc., 2010 WL 2632562, *7 (E.D. Mich. 2010); Starkey, 2010 WL 2541756 at *3; Pollock v. Bay Area Credit Service, LLC, 2009 WL 2475167, *9-10 (S.D. Fla. 2009); Bates v. I.C. System, Inc., 2009 WL 3459740, *2 (W.D. N.Y. 2009).

consent.   This distinction proves consent is tied to the number, not the person.   And, as several courts have noted, the district courts must follow and apply the FCC orders relating to consent per the Hobbs Act, 28 U.S.C. § 2342.[10]

Ignoring applicable and controlling FCC rules and relying on *Soppet v. Enhanced Recovery Co.*, 2011 WL 3704681 (N.D. Ill. 2011), plaintiff argues the phrase "called party" in § 227(b)(1)(A) means "actual recipient" of the call.   According to plaintiff, the TCPA consent defense is inapplicable, unless the caller can establish the "actual recipient" of the call consented to receive the call.   If the Court accepted plaintiff's interpretation of the TCPA consent defense, a wide-range of governmental agencies and businesses would face significant TCPA liability *even when they intend to comply with the law in good faith*.[11]   This is so because a caller will never know when a number will be "recycled" and given to someone else, or a call will be answered by someone other than the intended recipient of the call.   For this reason, several courts have correctly ruled an unintended recipient of a call is *not* the "called party."[12]   As these courts have

---

[10] See, e.g., Greene v. DirecTv, Inc., 2010 WL 4628734, *3 (N.D. Ill. 2010) ("The Federal Communications Commission . . . has clarified what constitutes 'express consent' under the statute pursuant to its authority to create rules and regulations implementing the TCPA. . . . A district court must accept the FCC's interpretation of the TCPA as expressed in their regulations and orders."); CE Design Ltd. v. Prism Business Media, Inc., 2009 WL 2496568 (N.D. Ill. 2009).   The Hobbs Act "vests the courts of appeals with exclusive jurisdiction to review certain orders issued by the Federal Communications Commission[.]"   Illinois Bell Telephone Co. v. F.C.C., 740 F.2d 465, 467 (7th Cir. 1984).

[11] The "laundry list" of affected governmental agencies, businesses, and persons will be extensive and include, but not be limited to:   local and state schools and universities; federal agencies, such as F.E.M.A., I.R.S., and Department of Education; doctors, physicians, dentists, and pharmacists; researchers and political candidates; banks, lending and financial institutions, and creditors; and all of their agents, independent contractors, and debt collectors.

[12] See, e.g., Leyse v. Bank of America, Nat. Ass'n, 2010 WL 2382400, *4 (S.D. N.Y. 2010) ("[I]n this case [plaintiff] is not a 'called party' within the meaning of § 227(b)(1)(B).   The

observed, the TCPA consent defense cannot be based upon the happenstance of who answers the call.  As one court has correctly observed:

> Under the statute, a business is permitted to . . . call . . . persons who have given prior express consent . . . .  When a business places such a call . . . , it does not know whether the intended recipient or a roommate or employee will answer the phone . . . .  If the business is liable to whomever happens to answer the phone . . . , a business could face liability even when it intends in good faith to comply with the provisions of the TCPA.

*Leyse*, 2010 WL 2382400 at *4 (citations omitted).

Simply put, the applicability of the TCPA consent defense should *not* depend on whether a relative, neighbor, or other unintended recipient answers the call.  Interpreting the phrase "called party" in § 227(b)(1)(A) as "intended recipient of the call" resolves the practical problem of "recycled" cell phone numbers and unintended recipients and addresses the public policy concerns expressed in the jurisprudence regarding prevention of good faith violations of the law.  Most importantly, as noted above, such an interpretation of the TCPA consent defense is in accord with the 2008 FCC order.

---

uncontroverted evidence shows that DialAmerica, the entity that placed the call on behalf of Bank of America, placed the call to [Ms.] Dutriaux, [plaintiff's] roommate and the telephone subscriber.  DialAmerica's records demonstrate that it associated the phone number with [Ms.] Dutriaux, not with [plaintiff].  To the extent that [plaintiff] picked up the phone, he was an unintended and incidental recipient of the call."); Meadows v. Franklin Collection Service, Inc., 2010 WL 2605048, *6 (N.D. Ala. 2010) ("[I]t is clear that [defendant], in calling [plaintiff's] number, was attempting to contact a debtor using the number provided by that debtor.  While [plaintiff] may have answered the phone, she was not the intended recipient of the call.  [Defendant's] actions violated neither the spirit nor the letter of the TCPA."), aff'd in relevant part, 2011 WL 479997, *4 (11th Cir. 2011) (observing if the court accepted plaintiff's argument "a debt collector that used a prerecorded message would violate the TCPA if it called the debtor's number and another member of the debtor's family answered."); Cubbage v. Talbots, Inc., 2010 WL 2710628, *3 (W.D. Wash. 2010) ("[Defendant] had the 'consent of the called party,' Mitchell, to place prerecorded messages to her telephone number.  The fact that her husband answered the call does not alter the legal authority to place the call."); Cellco Partnership v. Dealers Warranty, LLC, 2010 WL 3946713 (D. N.J. 2010).

Further, plaintiff's reliance on *Soppet* is improper. *Soppet* is not controlling for two reasons. First, after denying the defendant's summary judgment motion in *Soppet*, Judge Kennelly granted the defendant's petition to allow an interlocutory appeal pursuant to 28 U.S.C. § 1292(b), concluding "reasonable minds could differ" regarding whether there was consent for making the calls. *See Soppet v. Enhanced Recovery Co.*, Case No. 1:10-cv-05469 (Sept. 27, 2011) [doc 84], attached hereto as Exhibit A. Second, the *Soppet* petition for leave to appeal is currently pending in the Seventh Circuit. On this procedural record, *Soppet* is of no value.

### 2. West's Calls to the 7272 Number Were Made with the Consent of the "Called Party," i.e., Ms. Hunter

AT&T retained West to collect a debt owed by Sharmaine Hunter to AT&T relating to residential, landline telephone service provided by AT&T to Ms. Hunter.[13] On January 6, 2010, when Ms. Hunter opened her account with AT&T, she provided the 7272 number as a contact number at which she could be called.[14] When AT&T placed the account with West for collection on July 8, 2010, AT&T identified the 7272 number as a contact number at which Ms. Hunter could be called.[15] In an attempt to reach Ms. Hunter, West called the 7272 number.[16] None of West's calls to the 7272 number were answered.[17] Plaintiff was *not* the intended recipient of West's calls.[18] All of West's calls

---

[13] Exhibit A, Affidavit of M. Fournier, at ¶¶ 3-6.
[14] Id. at ¶¶ 3-4.
[15] Id. at ¶ 6.
[16] Exhibit D, Deposition of J. Jensen, at p. 40, lns. 19-22.
[17] Exhibit B, J. Jensen Aff., at ¶ 9.
[18] Exhibit D, J. Jensen Depo., at p. 40, lns. 19-22.

to the 7272 number were intended for and directed to Ms. Hunter.[19]

Based upon the undisputed facts, Ms. Hunter, the intended recipient of West's calls, is the "called party" for purposes of analyzing West's consent defense under § 227(b)(1)(A). As noted, Ms. Hunter provided the 7272 number to AT&T (her creditor) as a contact number at which she could be called.[20] In light of the undisputed facts, West's calls to the 7272 number were made with consent. As the FCC has ruled, "autodialed and prerecorded message calls *to wireless numbers provided by the called party* in connection with an existing debt are made with the 'prior express consent' *of the called party*[.]" *In re TCPA*, 23 FCC Rcd. at 564, ¶ 9 (emphasis added). Contrary to plaintiff's allegations, West did *not* violate the TCPA by calling the 7272 number.

In *Anderson v. AFNI, Inc.*, 2011 WL 1808779 (E.D. Pa. 2011), the court explained how the TCPA consent defense applies when a call is received by someone other than the intended recipient, as occurred here. The plaintiff, Tara Anderson, was the victim of an identity thief, Tara Sampson. After receiving several calls for debts she did not owe, the plaintiff filed a lawsuit asserting, *inter alia*, a TCPA landline claim.[21] In response, the defendant filed a summary judgment motion, arguing the plaintiff lacked standing to assert her TCPA claim. The court disagreed and rendered a decision explaining the relationship between the standing issue and consent defense:

---

[19] Id.; Exhibit C, D. Powell Depo., at p. 13, lns. 4-11.

[20] Exhibit A, M. Fournier Aff., at ¶¶ 3-6.

[21] The TCPA landline provision imposes certain limitations regarding calling residential telephone lines with an "artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(B). Like the cell phone provision at issue here, the landline provision contains an exception for calls made with the "prior express consent of the called party." Id.

> If we assume that the term "called party" is synonymous with "intended recipient" . . . , we nonetheless do not believe that granting standing to persons other than "called parties" [*i.e.*, intended recipients] does any violence to the statute itself or to its application in practice. After all, the exception for calls "made with the prior express consent of the called party" can operate to protect a defendant from liability even if someone other than the "called party" [*i.e.*, intended recipient] seeks to bring suit. Here, for instance, [the defendant] could conceivably claim that it had the prior express consent of Sampson [the identity thief and intended recipient of the defendant's calls] even though it is Anderson [the plaintiff and actual recipient of the defendant's calls] who brings this case.

*Anderson*, 2011 WL 1808779 at *8 (emphasis added).

Under the *Anderson* court's rationale, an actual recipient of an autodialed call has statutory standing to pursue a TCPA claim. However, the TCPA consent defense shields the defendant from liability if the company can prove it had the consent of the intended recipient to make the call. As the *Anderson* court ruled, "the exception for calls 'made with the prior express consent of the called party' can operate to protect a defendant from liability even if someone other than the 'called party' [*i.e.*, intended recipient] seeks to bring suit." *Id.* Again, that is precisely the circumstance presented here. Although West's calls were allegedly received by plaintiff, West is shielded from liability under the TCPA because West had the consent of the "called party," Ms. Hunter, to make the calls. Further, as explained below, the consent (*which is tied to the 7272 number called*) was never withdrawn or revoked *by anyone* prior to West making the calls.

### 3. Consent to Call the 7272 Number Was Never Withdrawn or Revoked by Anyone Prior to West Making the Calls

If West calls a telephone number and the recipient of the call requests the company stop calling the number, pursuant to West's policies and practices, West stops

calling the number.[22]   Plaintiff could have taken advantage of this policy, but his actions

indicate he truthfully did not want the calls to stop.  The evidence establishes, on July 12,

2010, West called the 7272 number *for the first time*.[23]  *Approximately two hours later*,

plaintiff called West at the West telephone number left on his caller identification and

asked a representative the name of the company.[24]   After obtaining the name of the

company, plaintiff hung up.[25]  During the call, plaintiff did *not* ask West to stop calling

the 7272 number.[26]  When asked during his deposition why didn't he ask West to stop

calling, plaintiff responded as follows:

> Q.    So your case is worth more money if you got 50 calls, as opposed to
>       three calls, right?
> A.    Correct.
> Q.    So isn't it true that the reason why you didn't tell that guy on July 12
>       to stop calling is because you wanted more calls?
> A.    I didn't want more calls, necessarily, but . . .
> Q.    You weren't going to complain about them?
> A.    Right.  But, you know, I wasn't going to like, you know, tell them to
>       stop calling.  Like I said, at that point I left it up to my counsel.
> Q.    You took, then, no steps whatsoever to try to get the calls to stop --
> A.    No.
> Q.    -- until your attorney told West?
> A.    Correct.[27]

Plaintiff knew West's calls to the 7272 number were not for him.[28]  Plaintiff also

---

[22] Exhibit D, J. Jenson Depo., at pp. 35-36, lns. 16-7.
[23] Id. at p. 17, lns. 6-13.
[24] Exhibit C, D. Powell Depo., at pp. 20-21, lns. 16-2, p. 35, lns. 18-22, pp. 36-38, lns. 1-3, p. 39, lns. 10-16, p. 40, lns. 11-19, p. 41, lns. 3-11, & p. 43, lns. 1-9; Exhibit D, J. Jenson Depo., at p. 19, lns. 11-22.
[25] Id.
[26] Id.
[27] Exhibit C, D. Powell Depo., at pp. 42-43, lns. 17-9
[28] Id. at p. 13, lns. 9-11, p. 32, lns. 19-23, & p. 33-34, lns. 16-3.

knew the one message West left for Ms. Hunter at the 7272 number was not for him.[29]

Yet plaintiff never requested in writing or verbally that West stop calling the 7272

number.[30] Instead, plaintiff let the calls continue until his attorney called undersigned

counsel in September 2010 and requested the company stop calling the 7272 number.[31]

By then, approximately two months had passed since plaintiff's July 12, 2010 call to

West and several additional West calls had occurred.[32] It is undisputed West did *not* call

the 7272 number again after plaintiff's attorney requested the company stop calling the

7272 number.[33]

Plaintiff apparently believes West's calls violated the TCPA because the

individual the company was attempting to reach (*i.e.*, Ms. Hunter) was allegedly no

longer associated with the 7272 number when West called. Plaintiff misunderstands the

consent defense and ignores applicable and controlling FCC rules, which confirm consent

is tied to the number, *not* the person.

Finally, to be very clear, West's interpretation of the consent defense does *not*

mean that debt collectors can autodial cell phone numbers *in perpetuity* and with absolute

immunity. Nor does it mean that actual recipients of autodialed cell phone calls are

without protection. If the person answering the phone call wants the calls to stop, then he

should simply ask the person calling to stop. Upon receipt of such a request, the consent

tied to the number would be withdrawn and revoked and any future calls to the number

---

[29] Id. at pp. 49-50, lns. 23-1.
[30] Id. at p. 35, lns. 7-11, p. 40, lns. 17-19, & p. 41, lns. 3-8.
[31] Id. at pp. 42-43, lns. 17-9; Exhibit D, J. Jensen Depo., at p. 41, lns. 8-23.
[32] Id.
[33] Id.

would be without consent and subject the person making the call to liability. In other words, under West's interpretation of the consent defense, a debt collector would be required to honor *all* withdrawals and revocations of consent, even if the withdrawal or revocation came from someone other than the intended recipient of the call.

### B. Plaintiff Is Not Entitled to Treble Damages under the TCPA

West did *not* violate the TCPA at all. However, to the extent the Court rules otherwise, plaintiff is not entitled to treble damages under the TCPA for two reasons. First, the undisputed record evidence establishes West never intended to call plaintiff.[34] Considering this fact, West's actions cannot be deemed "willful" or "knowing" to trigger potential treble damages. *See* 47 U.S.C. § 227(b)(3) ("If the court finds that the defendant willfully or knowingly violated this subsection . . . , the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."). Second, even if treble damages could be awarded here, this is not an appropriate case for the Court to exercise its discretion and award such damages. *See Sengenberger v. Credit Control Services, Inc.*, 2010 WL 6373008, *1 (N.D. Ill. 2010) ("The award of treble damages is at the discretion of the court.").

### IV. CONCLUSION

Considering the foregoing, the Court should deny plaintiff's Motion for Summary judgment, grant West's Cross Motion for Summary Judgment, and dismiss plaintiff's

---

[34] Exhibit C, D. Powell Depo., at p. 13, lns. 4-11; Exhibit D, J. Jensen Depo., at p. 40, lns. 19-22.

TCPA claim with prejudice and at plaintiff's cost.

Respectfully submitted,

/s/ James K. Schultz
Attorney for West Asset Management, Inc.

James K. Schultz
Nicole M. Barrett
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
55 West Monroe St., Suite 1120
Chicago, IL 60603
Telephone: 312-578-0990
Facsimile: 312-578-0991
jschultz@sessions-law.biz
nbarrett@sessions-law.biz

Bryan C. Shartle
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
3850 N. Causeway Blvd., Suite 200
Metairie, LA 70002
Telephone: 504-828-3700
Facsimile: 504-828-3737
bshartle@sessions-law.biz

Attorneys for West Asset Management, Inc.

## CERTIFICATE OF SERVICE

I certify that on October 26, 2011, a copy of the foregoing **Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Cross Motion for Summary Judgment** was filed electronically in the ECF system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system, including plaintiff's counsel, as described below. Parties may access this filing through the Court's system.

Alexander H. Burke
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: 312-729-5288
Facsimile: 312-729-5289
aburke@burkelawllc.com

/s/ James K. Schultz_____
Attorney for West Asset Management, Inc.

\\sfnfs02\prolawdocs\7989\7989-26935\Powell, Dominginho\505608.doc