IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DOMINGINHO POWELL, | ) | |
|     Plaintiff, | ) | 1:10-cv-7852 |
| | ) | |
|     v. | ) | |
| | ) | Judge Darrah |
| WEST ASSET MANAGEMENT, INC., | ) | |
|     Defendant. | ) | |
| | ) | JURY DEMANDED |
| | ) | |

**PLAINTIFF'S COMBINED SUMMARY JUDGMENT RESPONSE/REPLY**

As explained below, West's arguments are conjured out of smoke and mirrors. West cannot deny that (1) its dialer (not a person) dialed each of the calls to plaintiff's cell phone, and (2) it did not have plaintiff's "prior express consent" to receive autodialed calls.

Plaintiff's summary judgment motion should be granted, and West's denied.

**I. The TCPA Applies to Debt Collectors like West.**

West suggests in its "law and argument" summary that the TCPA does not regulate debt collectors. This argument warrants little comment. The prohibition on using automatic telephone dialing equipment ("ATDS") and any prerecorded or artificial voice in 47 U.S.C. §227(b)(2)(A)(iii) does not depend at all on the content of the calls.

Further, the Federal Communications Commission's January 4, 2008, order was decided on reconsideration of the debt collection industry trade association ACA International 's motion for clarification and reconsideration, as to this issue, and the issues of what constitutes "prior express consent" and whether a predictive dialer is an ATDS. West is a member of ACA International. The FCC unequivocally held that:

1

**We note that this prohibition applies regardless of the content of the call, and is not limited only to calls that constitute "telephone solicitations."**

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, GC Doc. 02-278, 23 FCC Rcd. 559, 565 paragraph 11 (January 4, 2008) (hereinafter "*In re TCPA (2008)*")(emphasis added). This court should find as Judge Grady did, and "reject [the] argument that the TCPA only applies to telemarketing, not debt collection." *Griffith v. Consumer Portfolio Serv., Inc.*, 2011 WL 3609012 (N.D.Ill. Aug. 16, 2011).

## II. West's Dialers are "automatic telephone dialing systems" Within the Meaning of the TCPA.

Similarly specious is West's argument that it did not use an automatic telephone dialing system within the meaning of the TCPA to call plaintiff. The parties seem to agree that any telephone equipment that has the "capacity to dial numbers without human intervention" constitutes an ATDS subject to the TCPA. *In re TCPA* (2008) ¶11; *Griffith v. Consumer Portfolio Services, Inc.*, No 10-cv-2697, 2011 WL 3609012 (Aug. 16, 2011) (Grady, J.); *Hicks v. Client Services, Inc.*, 2009 WL 2365637, at *4-5 (S.D.Fla. June 9, 2009); *Sengenberger v. Credit Control Services, Inc.*, 2010 WL 6373008 (N.D.Ill. June 17, 2010) (Zagel, J.).[1]

The question in this case is not whether West used its dialers as part of campaigns (although it did), but whether the dialing equipment used has the requisite "capacity." "Capacity" in the TCPA refers to the maximum that the equipment would be able to do, given the correct software. The FCC's 2003 and 2008 rulings, which are controlling, make clear that it

---

[1] FCC final orders such as *In re TCPA* (2008) and In re TCPA (2003) are not reviewable except through the FCC, or through filing an original action against the FCC in the Court of Appeals. *CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 446-48 (7th Cir. 2010).

2

is the "equipment," or hardware, that "capacity" refers to, rather than the system as a whole (i.e. equipment plus software):

> The record demonstrates that a predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers.

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, CG Docket 02-278, available at 2003 WL 21517853 (July 3, 2003), at ¶131 ("*In re TCPA* 2003"). This was reaffirmed in *In re TCPA* 2008, when the FCC quoted the above passage in footnote 23. The distinction between the regulated equipment, and software, is evident in paragraph 14 of the 2008 order, too:

> Most importantly, the Commission said that, to find that calls to emergency numbers, health care facilities, and wireless numbers are permissible when the dialing equipment is paired with predictive dialing software and a database of numbers, but prohibited when the equipment operates independently of such lists, would be inconsistent with the avowed purpose of the TCPA and the intent of Congress in protecting consumers from such calls. [*Id.*]

Webster's Dictionary defines "capacity" as, "the potential or suitability for holding, storing, or accommodating" and "the maximum amount or number that can be contained or accommodating." Merriam-Webster's Collegiate Dictionary (11th ed. 2003). The Concise Oxford English Dictionary (11th ed., 2008 rev.) defines "capacity" as: "the maximum amount that something can contain or produce." Thus, the question in this case is whether West's dialing equipment is capable of dialing telephone numbers without human intervention.

West fully admits that its dialers not only have the "capacity" to dial numbers without human intervention – it admits that the dialers *actually dialed* the calls to plaintiff. SMF 4:

3

**Each of the twenty-five calls were dialed by West's Ontario System, Guaranteed Contacts ("GC") dialer.**

**Response: Admitted.**

West's summary judgment papers assert that its dialers don't "dial numbers without human intervention" because a human has to program its dialer by loading debtor telephone numbers into its predictive dialer *en masse*, and then a human being is required to press a button (once) to start a predictive dialing campaign. West's corporate representative testified that the dialers work this way:

> Q. Okay. What does the GC dialer do?
>
> A. It will facilitate making phone calls based on a predetermined pattern of calling to accounts that we select on periods that we define.
>
> Q. … When the dialer makes phone calls, does West call that a campaign?
>
> A. Yes, I guess in general.
>
> Q. Okay. Would you explain to me the process of putting together and implementing a dialing campaign, you know, what -- what goes into designing and implementing a dialer campaign?
>
> A. We would start with understanding what portfolio of business we're going to work, what are the characteristics of the accounts within that portfolio, and then using collection knowledge from people that have -- you know, are assigned to manage those accounts, we would determine what are the best phone numbers to call, what frequency, when to call. I mean, you're really defining what treatment that you want to call.
>
> Within that, we would decide which of those calls should be made using the dialer, and from that list of criteria, the accounts would be selected into a campaign on a given day or period and called.
>
> Q. And so how -- how are the calls placed? Are those calls placed through the dialer?
>
> A. Some calls would be placed through the dialer.
>
> Q. And how would other calls be placed?
>
> A. They might be placed manually.

> Q. Okay. As part of the campaign, are the phone numbers typically dialed by the dialer?
>
> A. Only -- only the numbers that are selected to be in a dialer campaign.
>
> Q. Okay. So as to the numbers that are selected to be part of a dialing campaign, would it be accurate to say that the dialer dials a number rather than a human being?
>
> A. Yes.

SMF 4, 5; Jensen Depo at 7-9. This is the precise argument that was rejected in *Griffith*.

> The FCC concluded that predictive dialers are governed by the TCPA because, like earlier autodialers, they have the capacity to dial numbers "without human intervention." In doing so, it interpreted "automatic telephone dialing system" to include equipment that utilizes lists or databases of known, nonrandom telephone numbers. That is precisely how CPS's equipment operates: the dialer automatically dials numbers stored in the Logical View File and routes answered calls to available collectors.

*Griffith* at *3.

In sum, it is easy to see that West's GC dialers have the requisite "capacity." As demonstrated in plaintiff's motion West actually used its dialer to dial plaintiff's number, as part of a dialing campaigns. No human being ever dialed the number; a machine did the dialing. SMF 4. Plaintiff is entitled to summary judgment on this issue, as to each of the twenty-five dialer calls to his cellular telephone.

### III. West's Message was "Prerecorded Messages" within the Meaning of the TCPA.

As explained in plaintiff's moving papers, the Court should apply the ordinary definition of "prerecorded." Applying any of the definitions provided by Webster's dictionary, and any ordinary usage of the word, to prerecorded voice as used in the TCPA, "prerecorded" means "recorded ahead of time."

West's brief does not contest that plaintiff's facts and legal analysis establish that its precorded message was the kind regulated by the TCPA. The Court should enter summary

5

judgment for plaintiff on this issue, for the one call in which West's dialer left a message that was recorded ahead of time.

### IV. West is Not Entitled to a "Consent" defense.

A debt collector may thus be entitled to this affirmative defense if it can prove that it had the "called party's" "prior express consent" through "clear and convincing evidence." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, GC Doc 02-278, 18 FCC Rcd. 14014, 14081, para. 115 (July 3, 2003).[2] 47 U.S.C. § 227(b)(2)(A)(iii). West admits that it did not have plaintiff's consent to make the calls in question:

> **West admits the company currently has no evidence that plaintiff provided consent to be called at the 7272 number….**

Response to SMF 9. This should be the end of the inquiry.

In an effort to avoid liability, West's lawyers conjured an intent element into the statute. The argument is that the "called party" is the person West *intended* to call, rather than the person it *actually called*. West also argues that plaintiff has no right to sue because his cell phone is part of a family plan, and his mother's name is on the phone bills. As explained below, neither of these arguments makes sense, and the Court should find for plaintiff as to the "prior express consent" defense.

### A. Plaintiff was the "Called Party," and West's Needed *Plaintiff's* Consent to Call, Not Someone Else's

Defendant's position that the "called party" depends on the subjective intent of the caller has been rejected by every court in this District to have considered it:

---

[2] West's opposition papers abandon all of its affirmative defenses other than "prior express consent." This Court struck West's "failure to mitigate" defense earlier in this case. *Powell v. West Asset Management, Inc.*, 773 F.Supp.2d 761 (N.D.Ill.,2011)

6

- *Soppet v. Enhanced Recovery Co.*, No. 10 C 5469, 2011 WL 3704681, at *2 (N.D.Ill. Aug.21, 2011) Kennelly, J. (summary judgment)

- *D.G. vs. Diversified Adjustment Service, Inc.*, case no.1:11-cv-2062, 2011 WL 5506078 (N.D.Ill. Oct. 18, 2011) Lefkow, J. (motion to dismiss)

- *Tang v. Medical Recovery Specialists, LLC*, NO. 11 C 2109, 2011 WL 6019221(N.D.Ill. Jul 07, 2011) Holderman, J.; Appendix 1 (motion to dismiss)

- *D.G. v. William W. Siegel & Assocs.*, 791 F.Supp.2d 622 (N.D.Ill. 2011) Kocoras, J. (motion to dismiss)

Courts in other Districts, too, have almost universally rejected NCO's argument.

- *Kane v. National Action Financial Services, Inc.*, case no. 11-CV-11505, 2011 WL 6018403 (E.D.Mich. Nov. 7, 2011)

- *Anderson v. AFNI, Inc.*, No. 10–4064, 2011 WL 1808779, at *7–8 (E.D.Pa. May 11, 2011)

As explained by these six well-reasoned decisions, West has it all wrong: there is no "intent" defense to TCPA claims. Indeed, the FCC has expressly rejected Industry suggestions to insert a "bona fide error" defense into the TCPA. *In re TCPA,* 18 FCC Rcd.at 14117-18, (2003) at para 172 "[W]e reject proposals to create a good faith exception for inadvertent autodialed or prerecorded calls to wireless numbers…."[3]

As explained by Judges Kennelly, Lefkow, Holderman, Kocoras and others, "called party" refers to the *actual* recipient of the call, rather than the intended recipient.

This makes sense. Taken to its illogical conclusion, defendant's argument would mean that Sharmaine Hunter would have a cause of action for the calling of a telephone that was in

---

[3] After all, the TCPA is strict liability. *CE Design Ltd. v. Prism Business Media, Inc.*, 2009 WL 2496568 N.D.Ill. Aug. 12, 2009), *aff'd*, 606 F.3d 443, *cert. denied*, 131 S.Ct. 933 (2011); *Holtzman v. Turza*, 2011 WL 3876943 (N.D.Ill. Aug. 29, 2011) (awarding $500 per violation in junk fax case where willfulness was not at issue).

7

Mr. Powell's pocket, rather than Mr. Powell, who was annoyed with, and distressed by, the calls.

Perhaps most important, plaintiff is the person TCPA was enacted protect. In passing the TCPA, Congress acted to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers." S.Rep. No. 102-178, at 1 (1991) as reprinted in 1991 U.S.C.C.A.N. 1968; see *Satterfield v. Simon & Schuster*, 569 F.3d 946, 954 (9th Cir. 2009). As the Ninth Circuit explained in *Satterfield*:

> The TCPA was enacted in response to an increasing number of consumer complaints arising from the increased number of telemarketing calls. The consumers complained that such calls are a "nuisance and an invasion of privacy." The purpose and history of the TCPA indicate that Congress was trying to prohibit the use of ATDSs to communicate with others by telephone in a manner that would be an invasion of privacy. We hold that a voice message or a text message are not distinguishable in terms of being an invasion of privacy.

*Satterfield*, 569 F.3d at 954 (citations omitted). The Illinois Supreme Court made the same determination in *Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 223 Ill.2d 352, 365, 860 N.E.2d 307, 315 (2006). In *Valley Forge*, an insurance coverage case where the Illinois high court decided that sending "junk faxes" constituted "advertising injury" within the meaning of an Illinois insurance policy. In doing so, the Court held that the sending of junk faxes "implicates a person's right of privacy insofar as it violates a person's seclusion, and such a violation is one of the injuries that a TCPA [] claim is intended to vindicate." See also *Lozano v. Twentieth Century Fox Film Corp.*, 702 F.Supp.2d 999 (N.D.Ill. 2010) (analyzing legislative history and cases law, and determining that automated text messages constitute invasions of privacy, and are therefore actionable under the TCPA.). See also, *Melrose Hotel Co. v. St. Paul Fire & Marine Insurance Co.*,

8

432 F.Supp.2d 488, 500–01 (E.D.Pa.2006) ("It is clear that the TCPA aims in part to protect privacy. * * * Congress took aim at the intrusive nature of unsolicited faxes. Much the same way a telemarketing call invades one's right to be left alone, an unsolicited fax intrudes upon the right to be free from nuisance")

It is the person who actually receives the autodialed and prerecorded messages calls who the statute was intended to protect. Plaintiff, not Sharmaine Hunter, is the person whose seclusion privacy interests are implicated by defendant's calls. After all, there is no evidence at all that Sharmaine's phone ever rang. Plaintiff's motion for summary judgment on the issue of consent this issue should be denied, and plaintiff's granted.

### B. A Plaintiff Need Not be a "Subscriber" to have Standing to Sue.

Defendant next argues that it cannot be liable to plaintiff because her stepfather's name, rather plaintiff's name, is on the phone bills. This argument fails, too. As Judge Kocoras recognized, it is the "regular user and carrier of the phone" who has the right to sue. It is undisputed that plaintiff carried the 0113 phone with her, and did not share it with others. Although his mother's name was on the bill, which was a "family plan", plaintiff paid her for the cell phone usage. Resp DMF 23.

Again, this is because the statute is designed to protect the actual recipient, whose privacy was invaded through the calls. This is evident from the statute itself. None of the statutory sections upon which this case is based mention "subscriber" at all:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--
>
> > (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice--

> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

47 U.S.C. §22(b)(2)(A)(iii). Similarly, the "private right of action" section of the TCPA, 47 U.S.C. §22(b)(3), is extremely broad, and includes no requirement that the person suing be a "subscriber":

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State--
>
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> (C) both such actions.

In contrast, section 227(c), "protection of subscriber privacy rights" having to do with the do-not-call provisions of the TCPA repeatedly limits its application to "subscribers."

Further, out of an excess of caution, Mr. Powell's mother has assigned the right to pursue any TCPA claims that she has to plaintiff. Resp. DMF 23. Thus, even if his mother is the rightful "owner" of the claims, as West urges, plaintiff has the right to sue to vindicate those claims.

### V. West's Violations were Willful.

West's only argument that its calls were not "willful" complains that plaintiff did not notify it about its TCPA violations. In making this argument, West attempts to relitigate whether a consumer has a duty to mitigate his damages by telling a collection agency that it is calling the wrong number; an issue this Court has already addressed in a published opinion. *Powell v.*

10

*West Asset Management, Inc*., 773 F.Supp.2d 761 (N.D.Ill. 2011). As a matter of law, plaintiff had no duty to tell West that it was calling the wrong number.

Indeed, "willfulness" hinges on the caller's state of mind, rather than on that of the called party. And it is the intent to make the calls, rather than the intent to call one person or another, that determines whether the calls were "willful." The Telecommunications Act, 47 U.S.C. §312(f)(1) defines "willful" as

> f) "Willful" and "repeated" defined
>
> For purposes of this section:
>
> (1) The term "willful", when used with reference to the commission or omission of any act, means the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this chapter or any rule or regulation of the Commission authorized by this chapter or by a treaty ratified by the United States.

West does not contest that the Court should apply this definition to determine whether a TCPA violation is "willful," and even cites the leading case from this District on the statute's applicability, *Sengenberger*

*v. Credit Control Services, Inc.*, 2010 WL 1791270 (N.D.Ill. May 05, 2010); *reconsideration*

*denied on issue of willfulness*, 2010 WL 6373008 (June 17, 2010).

It is undisputed in this case that defendant consciously and deliberately dialed the calls that are the subject of this lawsuit, SMF 8, and the Court should find that the calls were "willful" as a matter of law. Plaintiff, however, agrees with West that the issue of whether treble damages should be awarded is a question for the jury.

**CONCLUSION**

For the forgoing reasons, the Court should enter summary judgment in favor and against defendant on the following four issues:

a) West used an "automatic telephone dialing system" as defined by the TCPA and applicable FCC orders, to call plaintiff's cellular telephone twenty-five times;

b) West used a "prerecorded voice" as defined by the TCPA and applicable FCC orders during one of the twenty-five calls to plaintiff's cellular telephone;

c) Defendant has not met its burden of proof as to any affirmative defense, including "prior express consent"; and

d) Defendant's violations were "willful" within the meaning of the TCPA, entitling plaintiff to at least minimum statutory damages of $500 per call.

Finally, the Court should reserve the issue of whether plaintiff is entitled to treble damages as a question for the jury, and set the case for a pretrial conference and jury trial on this issue.

Respectfully submitted,

/s/Alexander H. Burke

**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com